FILED

2010 Apr-12  PM 01:31
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN  DIVISION

| | | |
|---|---|---|
| **DEBORAH GRINTON, as personal representative of the Estate of Shameka Grant, deceased; DEBORAH GRINTON, as guardian of NJG, a minor; and DEBORAH GRINTON, as guardian of DIC, a minor** | ] ] ] ] ] ] | |
| | ] | **CV-08-BE-1244-E** |
| **Plaintiffs,** | ] ] | |
| **v.** | ] ] | |
| **RENZYNE T. COFFER; STEVEN WADE; FRED FORSYTHE; JOHN DRYDEN; the CITY OF ANNISTON; and ANNISTON POLICE DEPARTMENT,** | ] ] ] ] ] ] | |
| **Defendants.** | ] ] | |

## MEMORANDUM OPINION

This matter is before the court on the "City-Defendants' Motion for Summary Judgment" (doc. 33).  The "City-Defendants" are all the Defendants *except* Renzyne Coffer:  the City of Anniston; the Anniston Police Department ("APD"); Officer Steven Wade; Officer Fred Forsythe; and Police Chief John Dryden.  The motion is supported by the record,  a brief (doc. 34), and evidentiary submissions (doc. 35 and docs. 35-2 through 35-13).  Plaintiff responded with a brief (doc. 37) and evidentiary material (doc. 38), and Defendants replied (doc. 39).   On February 26, 2010, the court held a hearing on the motion.

For the reasons stated on the Record and in this Memorandum Opinion, the court finds that Defendants' motion is due to be GRANTED as to all federal claims.  Further, the court finds

that the motion is due to be GRANTED as to all state law claims asserted against Defendants Wade and Forsythe in their *official capacities*, and all state law claims asserted against Chief Dryden, the APD, and the City of Anniston.

The court, in its discretion, chooses not to exercise its supplemental jurisdiction over the remaining pendent state law claims.  Thus, the court will not rule on the motion as to the remaining pendent state law claims asserted against Wade and Forsythe; it finds that those claims are due to be DISMISSED WITHOUT PREJUDICE.

Finally, the court *sua sponte*  DISMISSES WITH PREJUDICE all remaining fictitious party Defendants, and DISMISSES WITHOUT PREJUDICE the remaining claims, which are state law claims asserted against Defendant Coffer.

## I.  ALLEGATIONS OF THE COMPLAINT AND PROCEDURAL HISTORY

On July 14, 2008, the Plaintiff, Deborah Grinton, filed this action in her capacity as the personal representative of the estate of Shameka Grant, and as legal guardian to Grant's two minor children.  The original Complaint did not name Defendants Wade and Forsythe, but included fictitious parties A though Z.  The text of the Complaint described Fictitious Parties A, B, and C as officers who traveled to the home of Defendant Coffer and Shameka Grant on July 14, 2006, arrested Defendant Coffer, and were on the premises at the time Defendant Coffer shot Grant.

On October 15, 2008, with the court's permission, Plaintiff filed the Amended Complaint (doc. 15), which includes six counts, five of which are against the City Defendants: Count I - alleging that the City Defendants violated the Fourteenth Amendment  rights and statutory rights of Shameka Grant and her minor children, including their right not be deprived of life, liberty and

property without due process of law, all brought pursuant to §§ 1983 and 1988; Count II -
alleging that the City Defendants created a special danger, breached a duty to protect Shameka
Grant once they created that danger, and violated the due process rights of Grant and her minor
children through conduct that was "arbitrary and conscience shocking in a constitutional sense,"
brought pursuant to §§ 1983 and 1988; Count III - alleging that the City Defendants' reckless or
intentional conduct rose to the level of "arbitrary or conscience shocking in a constitutional
sense" and violated the constitutional rights of Shameka Grant and her minor children, brought
pursuant to §§ 1983 and 1988; Count IV - alleging that all Defendants committed the tort of
outrage, brought pursuant to Alabama law and § 1988; and Count V - alleging that all
Defendants' negligent and/or wanton conduct caused the wrongful death of Shameka Grant,
brought pursuant to Alabama statutory (Ala. Code § 6-5-410 (1975)) and common law.

In Count VI, which Plaintiff brings on behalf of Grant's estate only and against Defendant
Coffer only, Plaintiff alleges that Coffer intentionally shot and assaulted Grant and caused her
death. That count incorporates by reference all other counts, but does not state a federal claim.

Defendant Coffer has never filed an Answer or any other responsive pleading nor have
Plaintiffs moved for a default judgment against him. Thus, the merits of the claim against Coffer
are not involved in this motion for summary judgment.

The Amended Complaint (doc. 15) named Defendants Wade and Forsythe as Defendants,
presumably in the place of Fictitious Defendants A and B; the Amended Complaint then only
listed Fictitious Parties C through Z.

On October 29, 2009, the City Defendants filed a motion for summary judgment as to all
counts except Count VI, which was asserted against Defendant Coffer alone. The court entered a

briefing schedule with a deadline of November 23, 2009 for Plaintiff to respond to the motion.

Plaintiff filed a timely response and the City Defendants replied.  The court also entered an Order

setting the Pretrial Conference in this matter for February 26, 2010.  On February19, 2010, the

court entered an Order converting the Pretrial Conference into a hearing on the motion for

summary judgment and requesting clarification on a statute of limitations issue (doc. 42).  On

February 23, 2010, three days before the hearing and three months after the deadline for her

response to the motion for summary judgment, the Plaintiff filed a motion for leave to

supplement her response (doc. 43), and alluded to but did not attach documents relating to her

due diligence in timely identifying Defendants Wade and Forsythe.  The court held a hearing on

the motion for summary judgment on February 26, 2010, and addressed both the motion for leave

to supplement and the motion for summary judgment.  The court subsequently denied the motion

for leave to supplement as untimely. (doc. 44).

## II. FACTS

The court views the following facts in the light most favorable to the Plaintiffs:

On July 14, 2006, just before 1:00 p.m., while Defendants Wade and Forsythe were

arresting him, Defendant Renzyne Coffer shot Shameka Grant with a handgun in the master

bedroom of their home in Anniston, Alabama.  Grant and Coffer had lived together for seven to

eight years and had two minor children.

At approximately 10:00 a.m. on the morning of the shooting, Grant had met with

Sergeant Steven Dodson at the APD to make a domestic violence report against Coffer.  Dodson

discussed with Grant the option of going to the City Magistrate's office and signing a domestic

violence warrant, but she did not do so.  Grant did, however, clearly express her desire to get her

children out of the house with Coffer.

Dodson confirmed Grant's understanding that an outstanding warrant existed for Coffer's failure to pay City garbage fees.  He then called warrant officers Steven Wade and Fred Forsythe to the APD and requested that they accompany Grant to the house and arrest Coffer pursuant to the garbage warrant.   Wade understood that the officers would be arresting Coffer for failure to pay garbage fees, not domestic violence; however, he also understood that, in light of the report, they would go with Grant to allow her to safely procure her children and belongings.

When they arrived at Grant's home, Wade and Grant went to the front door while Forsythe walked around the right side towards the rear, in case Coffer tried to run out the back door. When Wade and Grant entered the home, Coffer appeared in the hallway, wearing only boxer shorts, and Wade could tell he had no weapon.  Wade told Coffer that he had an arrest warrant against Coffer for failing to pay his garbage fees, and that the county had a possible warrant against him for failing to appear in court.  Coffer took the news calmly.  He said to Grant in a low, calm voice: "I thought you wasn't going to do this."  (doc. 35-2, at 28).   Wade responded that she had nothing to do with the warrant; the officers were there for a garbage fee warrant that Coffer had not paid.

Either because of a request from Coffer or because Wade suggested that Coffer put on some clothes, Coffer went to the master bedroom to get dressed, with Wade accompanying him. Wade remained within an arm's reach of Coffer while Coffer first looked in a dresser in the master bedroom, put on shorts, walked down the hallway to look in the closet, and finally, returned to the master bedroom.  As the two men returned to the master bedroom, Coffer quickly shut the door hard in Wade's face, with Wade on the outside of the master bedroom.  Wade

threw his hands up immediately, and put one foot forward to keep the master bedroom door from closing completely; Coffer was apparently behind the door, holding it closed, and Wade's foot kept it open only about two inches.  Forsythe ran towards Wade to help, and within a second and a half, the two officers were using their bodies to force the door open.

As the door flew open, the officers heard several gun shots, almost like an automatic firing.  Although they did not see Coffer standing, they could see his head pop up as he was on the far side of the bed, lying down.   Forsythe shot a Taser at Coffer.  After Wade made sure that Coffer was no longer moving, Wade got the daughter, who was in the master bedroom but unhurt, out of the room.  The officers then told Coffer to get up, and they handcuffed him.  Not until the officers got Coffer to his feet did they discover that Grant was dead on the floor, where he had been lying on top of her.  Later, the autopsy revealed that the cause of Grant's death was two gun shot wounds in the back of her heart, two gun shot wounds originating in her left arm and going into her chest, and a gun shot wound of the lower abdominal wall.

The record does not reflect when Coffer picked up the gun.   Coffer did not have the gun when Wade first saw him in his underwear, and Wade did not see him pick up a gun when he subsequently followed him around the house.  Wade acknowledged that Coffer's hands were inside drawers and that Coffer had reached inside a closet, but the evidence does not indicate whether Coffer picked up the gun before or after he slammed the master bedroom door.

Grant's son was in the house but was not in the master bedroom at the time of the shooting, and he did not see the shooting occur.

The APD's Police Chief, John Dryden, testified that Wade and Forsyth followed all of the APD's policies, rules, and regulations, and acted within their discretionary power in the areas

6

that mandatory rules did not cover. The Manual of Rules and Regulations of the APD under the

section marked "ARRESTS" requires that officers effecting an arrest "should not unnecessarily

jeopardize their lives or the lives of others."  (doc. 35-11, at 26 - Ex. 10, Rule 3.11.1).   That

Manual and the APD's Standard Operating Procedures provide general guidelines and

procedures for officers to follow during arrests[1].

---

[1]  The Manual of Rules and Regulations of the APD provides in relevant part:

**3.11.5 Degree of Force to Be Used In Making An Arrest**
In making an arrest, an officer must be careful not to submit his prisoner to any greater severity or indignity than is necessary to effect the arrest and bring the prisoner safely to the police building for booking.

The statutes require the officer to do his duty at all hazards, but in the performance of his duty they require him to be as considerate as circumstances will permit.  The officer must remember that he is responsible for his prisoner and is required to do what is necessary to secure him.  The officer must use his own good discretion, and if he does his duty in a consistent, careful, and prudent manner, he will be justified.  While the officer is required to be as gentle and considerate in making an arrest as circumstances will permit, he must also remember that he is a representative of the law, to whose lawful demands all must submit.  The officer is charged with the duty and armed with the power to compel such submission.

**3.11.9 Persons To Be Searched:**
In the arrest, transportation and detention of prisoners, the member shall take precaution to prevent an escape, injury to himself or others, or damage to property.  When making an arrest, he shall search the prisoner carefully and shall immediately take possession of all weapons and evidence. If, for any reason, a prisoner cannot be thoroughly searched before being turned over to a receiving officer, the arresting officer, shall without fail, notify the officer receiving the prisoner.

**3.11.13 Search Scene of Arrest:**
After a prisoner has been arrested, the arresting officer shall search the scene of the arrest for weapons or evidence that may have been concealed, dropped or thrown away by the prisoner.
(doc. 35-11, at 26).

The APD's Standard Operating Procedures provides in relevant part:
**100.060 Use of Discretion by Sworn Officers**
All sworn officers of the Anniston Police Department shall have the discretion to arrest or utilize other alternatives to arrest, i.e., issue citations, summonses, refer to another agency, handle the situation informally or issue verbal orders. Discretion shall be utilized in keeping with the highest standards of professional conduct and in a manner which insures fairness and equity of action toward all citizens.

**100.070 Use of Handcuffs**
Department-issued handcuffs, or others of like policy, shall be utilized to control/secure all prisoners.

**500.010 Arrest Warrant Procedures**
Arrest warrant procedures for all department personnel are set forth in Administrative Order 1-78.  Generally, however, personnel shall serve warrants which they are directed to serve.

Chief Dryden testified that the APD had no written checklist on how to effectuate an arrest; the officers were simply expected to use their discretion and common sense and to carry out the arrest as safely as possible.  While the APD's written policy requires the use of department-issued handcuffs to secure all prisoners, it does not mandate the exact point when the arrestee must be handcuffed; that determination is left to the discretion of the arresting officer as long as it occurs before the arrestee is placed in the patrol car.  (doc. 35 Ex. 8, SOP § 100.060, at 3).

Dryden and Forsythe both testified that Wade's decision to allow Grant to enter the house at the time the officers arrested Coffer fell within the parameters of Wade's discretion under the circumstances.  Wade acknowledged in deposition testimony that if he determined Coffer was going to look inside the closet, then asking Coffer why he was going to the closet and telling Coffer that Wade would get whatever he needed for Coffer would have represented good police practice.  Chief Dryden testified that before Wade allowed Coffer to look into the closet in the hall, using "common sense and a safety practice," Wade should have looked in the closet first, if possible. (doc. 35-4, at 83).

The written policy also gives discretion to arresting officers to allow arrestees to clothe themselves before handcuffing them and placing them in a police vehicle.  Chief Dryden testified that Wade acted properly and within his discretion when he allowed Coffer to dress.

---

It shall be the responsibility of each individual officer to follow this procedure without fail.  Failure to do so will result in dismissal of cases and could subject the individual officer as well as the city to civil liability suits. (doc. 35-9, at 6 & 11.)

### III.  LEGAL STANDARD

Summary judgment is an integral part of the Federal Rules of Civil Procedure.  Summary judgment allows a trial court to decide cases when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56.  When a district court reviews a motion for summary judgment it must determine two things: (1) whether any genuine issues of material fact exist; and if not, (2) whether the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56).  The moving party can meet this burden by offering evidence showing no dispute of material fact or by showing that the non-moving party's evidence fails to prove an essential element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23.  Rule 56, however, does not require "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.*

Once the moving party meets its burden of showing the district court that no genuine issues of material fact exist, the burden then shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Disagreement between the parties is not significant unless the disagreement presents a "genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)   In responding to a motion for summary

judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a *genuine issue for trial*.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)) (emphasis added); *see also* Advisory Committee Note to 1963 Amendment of Fed. R. Civ. P. 56(e), 28 U.S.C. app. ("The very mission of summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."). The moving party need not present evidence in a form admissible at trial; "however, he may not merely rest on [the] pleadings." *Celotex*, 477 U.S. at 324. If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249-50 (citations omitted).

In reviewing the evidence submitted, the court must "view the evidence presented through the prism of the substantive evidentiary burden," to determine whether the nonmoving party presented sufficient evidence on which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Commc'n, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). The court must refrain from weighing the evidence and making credibility determinations, because these decisions fall to the province of the jury. *See Anderson*, 477 U.S. at 255; *Stewart v. Booker T. Washington Ins. Co.*, 232 F.3d 844, 848 (11th Cir. 2000); *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). Furthermore, all evidence and inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *Graham*, 193 F.3d at 1282. The non-moving party "need not be given the

10

benefit of every inference but only of every reasonable inference." *Id.* The evidence of the non-moving party "is to be believed and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255. After both parties have addressed the motion for summary judgment, the court must grant the motion *if* no genuine issues of material fact exist *and if* the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.

As discussed later in this opinion, pleading standards increase in the Eleventh Circuit where a plaintiff asserts a claim under 42 U.S.C. § 1983, and a defendant raises his entitlement to qualified immunity. *See Amnesty Int'l., USA v. Battle*, 559 F.3d 1170, 1179-80 (11th Cir. 2009).

## IV. DISCUSSION

### A. Dismissal of Fictitious Parties

Although no motion before the court specifically requests the dismissal of remaining fictitious parties, the court *sua sponte* addresses this issue. Fictitious party practice is generally not permitted in federal court. *New Sports & Recreation, Inc.*, 114 F.3d 1092, 1094 n. 1 (11th Cir. 1997). However, as discussed later in this opinion regarding relation back of the Amended Complaint, some circumstances exist when a federal court may allow fictitious party pleading. The Scheduling Order in this case (doc. 9) set a deadline of October 20, 2008 for Plaintiff to amend pleadings and/or join additional parties. Although the Amended Complaint identified fictitious Defendants A and B, the October 2008 deadline expired without further amendment of pleadings to identify fictitious parties C through Z. Accordingly, assuming *arguendo* – without making a specific finding – that this case represents one in which the fictitious parties were properly named initially, the court finds that all remaining fictitious party Defendants in this case are due to be DISMISSED WITH PREJUDICE.

### B.  Motion for Summary Judgment by Chief John Dryden

Although Defendants' motion and brief addressed all claims brought against Chief Dryden, Plaintiff's brief does not address or otherwise oppose Chief Dryden's motion to dismiss. Accordingly, the court finds that Plaintiff has abandoned all claims against Chief Dryden.  *See Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta,* 219 F.3d 1301, 1326 (11th Cir. 2000) (finding that the party's failure to brief and argue an issue before the district court is grounds for finding the issue abandoned). Chief Dryden's motion for summary judgment is due to be GRANTED.

### C.  Motion for Summary Judgment by the Anniston Police Department

The court finds that the APD is merely a department of the City of Anniston, has no legal existence separate from the City, and is not a  proper party for suits brought pursuant to § 1983 or Alabama state law.  *See, e.g., Dean v. Barber*, 951 F.2d 1210, 1214-15 (Ala. 1992) (stating that "police departments are not usually considered legal entities subject to suit" and acknowledging that police and sheriffs' departments lack a capacity to be sued under Alabama law and for violations of federal law brought pursuant to § 1983); *Hawkins v. City of Greenville,* 101 F. Supp. 2d 1356, 1363-64 (M.D. Ala. 2000) (finding that the police department "is not a suable entity" for claims brought under Alabama and federal law).  In any event, Plaintiff did not address the Department's motion for summary judgment in her brief or otherwise oppose it, and thus, the court finds that she also has abandoned her claims against the Department.  The court finds that the motion for summary judgment on behalf of the Anniston Police Department is due to be GRANTED.

12

**D.  Motion for Summary Judgment by the City of Anniston**

   *a.  Federal Claims*

Plaintiff's Amended Complaint contains numerous claims against the City of Anniston, including wrongful hiring, improper training and supervision of employees, failing to institute or instituting inadequately "rules, regulations, protocols, practices and guidelines for the supervision and safety" of members of the public, such as Shareka Grant, against dangers from arrestees, such as Defendant Coffer, etc.  (doc.  15, ¶¶ 31-38).  However, in her brief, the only claim that Plaintiff asserts against the City is based not upon any improper City policies but is based solely upon the alleged unconstitutional actions of officers Wade and Forsythe at scene of Grant's shooting.  Thus, the court finds that she has abandoned all claims against the City except those based on such actions of officers Wade and Forsythe.

The Supreme Court of the United States has established that municipalities may only be sued under § 1983 when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or when the city has a "custom" of  constitutional deprivations.  *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 690-91 (1978).  A municipality "cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."  *Id.*  at 691 (emphasis in original). Yet, in focusing solely on the actions of officers Wade and Forsythe and failing to point to a policy or custom of the City of Anniston, Plaintiff's brief argues for *respondeat superior* liability; Plaintiff is attempting to do exactly what the Supreme Court explained she could not. Accordingly, the court finds that the City's motion for summary judgment as to the federal

13

claims is due to be GRANTED.

### b. State claims

Plaintiff's brief does not address or otherwise oppose the City's motion to dismiss as to the Alabama statutory and common law claims.  Accordingly, the court finds that Plaintiff has abandoned those claims against the City.  *See Coal. for the Abolition of Marijuana Prohibition,* 219 F.3d at 1326. The City's motion for summary judgment is due to GRANTED as to all claims brought against it under Alabama law.

### E.  Motions for Summary Judgment by Wade and Forsythe

### 1.  Official Capacity Claims

In ¶ 15 of the Amended Complaint, Plaintiff purports to sue the officers in their individual and official capacities. (doc. 15, at 6).  In their brief, Defendants Wade and Forsythe argued that the official capacity claims against them, in effect, claims against the City and should be dismissed as redundant.  *See Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (affirming the dismissal of official capacity claims against municipal officers when the city was sued directly, finding the claims functionally equivalent to those against the city); *see also Kentucky v. Graham*, 473 U.S. 159, 166-67 & n. 14 (1985) (stating that "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"); *Clifton v. Ga. Merit System*, 478 F. Supp. 2d 1356, 1362 (N.D. Ga. 2007) (dismissing as redundant claims against individually named defendants in their official capacities).  The court agrees.  In any event, Plaintiff did not address this argument or the viability of official capacity claims in their responsive brief and, thus, abandoned those claims.  Accordingly, the court will GRANT the motion for summary judgment as to all claims against Defendants Wade and Forsythe in their

14

official capacities.

**2.  Statutory Bar**

*(a) Claims Brought on Behalf of the Estate of Shameka Grant*

Defendants Wade and Forsythe argue that they are entitled to summary judgment because the claims against them are barred by the applicable statute of limitations.  The claims against Wade and Forsythe set forth in the Amended Complaint assert that they committed constitutional and statutory violations, including Fourteenth Amendment violations, brought pursuant to § 1983 (Counts I-III); the tort of outrage, brought pursuant to Alabama law (Count IV); and negligent and wanton wrongful death (Count V), brought pursuant to Alabama law.  Because of rulings discussed later in this opinion, the court will only address the statute of limitations for the federal claims.

The statute of limitations for the federal § 1983 claims is the limitations period for "personal injury actions" employed in the state in which the district court is situated.  *Wilson v. Garcia*, 471 U.S. 261 (1985) (holding that 42 U.S.C. § 1988 requires courts to borrow and apply to all § 1983 claims a state's personal injury statute of limitations); *see* 42 U.S.C. § 1988.  Where state law provides more than one statute of limitations for personal injury actions, the court addressing the § 1983 claim should borrow the state's general or residual personal injury statute. *Owens v. Okure*, 488 U.S. 235 (1989).  Thus, Alabama's two year limitations period applies to the § 1983 claims.  *Jones v. Preuit & Mauldin*, 876 F.2d 1480, 1483 (11th Cir. 1989) (finding that "the two-year limitations period of Ala. Code § 6-2-38(l) applies to section 1983 actions in Alabama.").

The original Complaint, which did not name Wade and Forsythe as Defendants, was filed

on July 14, 2008 – within two years of  the July 14, 2006 events made the basis of this suit,

including Grant's death.  However, the Amended Complaint, which named Wade and Forsythe

as Defendants, was filed on October 15, 2008, *after* the two years had expired.  Consequently,

the Amended Complaint's claims against Wade and Forsythe must  "relate back" to the original

Complaint to be viable for the purposes of the statutory bar.   Predictably, Plaintiff argues that

those claims relate back, and Defendants disagree.

Rule 15(c)(1) of the Federal Rules of Civil Procedure governs the relation back of

amendments:

> An amendment to a pleading relates back to the date of the original
> pleading when:
> (A) the law that provides the applicable statute of limitations allows
> relation back;
> (B) the amendment asserts a claim or defense that arose out of conduct,
> transaction, or occurrence set out – or attempted to be set out – in the
> original pleading; or
> (C) the amendment changes the party or the naming of the party against
> whom a claim is asserted if Rule 15(c)(1)(B) is satisfied and if, within the
> period provided by Rule 4(m) for serving the summons and complaint, the
> party to be brought in by amendment:
>> (i) received such notice of the action that it will not be prejudiced in
>> defending on the merits; <u>and</u>
>> (ii) knew or should have known that the action would have been
>> brought against it, but for a mistake concerning the proper party's
>> identity.

Fed. R. Civ. P. 15(c)(1) (emphasis added).

Subsection (1)(C) does not apply because no evidence exists that Wade and Forsythe

received actual notice of this suit within the 120 days of the original Complaint, as required by

Rule 15(c)(1)(C); the docket sheet reflects that the summonses on the Amended Complaint for

Wade and Forsythe were not served until January 2009, long after the 120 days had lapsed.

16

Further, Plaintiff's ignorance of the identity of the police officers would not qualify as a "mistake" within the meaning of 15(c)(1)(C)(ii). *See Wayne v. Jarvis*, 197 F.3d 1098, 1103 (11th Cir. 1999).

The other subsection that would arguably apply is subsection (c)(1)(A) in light of the statute of limitations issue. Because Plaintiff's argument focuses on Alabama law regarding relation-back, then she must travel under this subsection rather than the other two, which apply pure federal law. *See Saxton v. ACF Indus.*, 254 F.3d 959, 966 n. 11 (11th Cir. 2001). Applying that subsection, the court must determine whether "the law that provides the applicable statute of limitations allows relation back." Fed. R. Civ. P. 15(c)(1)(A). All of the claims in the instant case involve borrowing various Alabama statutory periods. The Eleventh Circuit held that Federal Rule 15(c)(1)(A) [formerly designated as 15(c)(1)] "incorporates state law relations-back rules when state law provides the statute of limitations for the claims." *Saxton v. ACF Indus.*, 254 F.3d 959, 962-63 (11th Cir. 2001).

However, federal jurisdiction in *Saxton* was based on diversity of citizenship, and the court's emphasis of its diversity jurisdiction throughout the opinion raises the question whether its holding applies equally to federal question jurisdiction cases. Another district court sitting in Alabama addressed this very issue and, in a well-reasoned opinion, ruled that *Saxton's* holding should apply to federal question cases as well. *Mann v. Darden*, 630 F. Supp. 2d 1305, 1311 (M.D. Ala. 2009) (quoting committee notes to Rule 15 that contemplate the rule's application in federal question cases). Even though Alabama rules regarding relation-back of amendments would apply in this federal-question case and would allow the substitution of Wade and Forsythe for fictitious parties under certain conditions, Plaintiff nevertheless has not met the conditions for

17

substitution set forth in Alabama law.

The court turns to the relevant Alabama rules to explain why.  Rule 15(c) of the Alabama

Rules of Civil Procedure addresses relation back.  Subsection (c)(4) sets out the applicable rule

when – as in this case – fictitious parties are involved: "An amendment of a pleading relates back

to the date of the original pleading when ... relation back is permitted by principles applicable to

fictitious party practice pursuant to Rule 9(h)."  Fed. R. Civ. P. 15(c)(4).  Rule 9(h) in turn

provides: "When a party is ignorant of the name of an opposing party and so alleges in the party's

pleading, the opposing party may be designated by any name, and when that party's true name is

discovered, the process and all pleadings and proceedings in the action may be amended by

substituting the true name."  Fed. R. Civ. P. 9(h).  The Eleventh Circuit explained in *Saxton* that

the combination of Alabama Rules 15(c) and 9(h) allows a plaintiff to avoid the statutory bar  if

> (1) the original complaint adequately described the fictitious
> defendant; (2) the original complaint stated a claim against the
> fictitious defendant; (3) the plaintiff was ignorant of the true identity of
> the defendant; and (4) the plaintiff used due diligence to discover the
> defendant's true identity.

*Saxton*, 254 F.3d at 965 (citing *Jones v. Resorcon, Inc.*, 604 So. 2d 370, 372-73 (Ala. 1992)).

The plaintiff attempting the substitution to avoid the statutory bar bears the burden of

establishing these elements.  *See, e.g., Ex parte Atkinson,* 976 So. 2d 1001, 1003 (Ala. 2007);

*Jones*, 604 So. 2d at 372-73.

In the instant case, Defendants argue that Plaintiff has not met her burden of establishing

elements three and four.  In her brief opposing summary judgment, Plaintiff cites Alabama Rules

15(c) and 9(h), generally asserts their applicability for relation-back purposes, and simply states

in a conclusory manner that she was "unable to identify the two officers, namely Wade and

18

Forsythe, until they had been identified by the other Defendants." (doc. 37, at 8). However, she does not explain *why*, by exercising due diligence, she could not have discovered the identities of Wade and Forsythe before the statute of limitations ran. In her original Complaint, Plaintiff made the conclusory statement that the City of Anniston had refused to divulge the names of Fictitious Parties A and B – the fictitious parties for whom she attempted to substitute Wade and Forsythe. (doc. 1, ¶ 12). In neither the pleadings nor in her brief did she state what efforts *she* had made to obtain the names or explain why the officer's names would not have been listed on public records or other accessible reports involving the shooting.

The standard for determining whether Plaintiff exercised due diligence is whether she "knew, or should have known, or was on notice, that the substituted defendants were in fact the parties described fictitiously." *Jones*, 604 So. 2d at 372. In *Jones,* the Supreme Court of Alabama, applying this standard, required a plaintiff to diligently pursue information that was withheld, including seeking court-ordered access. *Id.* at 373.

In the instant case, the court finds that Plaintiff has not met her burden of establishing due diligence in timely pursuing the identities of Defendants Wade and Forsythe. Accordingly, the amendment substituting Wade and Forsythe does not relate back to the date of the original complaint under Alabama law. Therefore, even if the Alabama rules of relation-back apply to this federal-question case, the claims against Wade and Forsythe are nevertheless barred by the two-year statutory period. The court finds that Wade and Forsythe's motion for summary judgment regarding all federal claims that Plaintiff brought against them *on behalf of Grant's estate* is, therefore, due to be GRANTED.

Alternatively, the court finds that the challenged conduct of Defendants Wade and

19

Forsythe fell within their discretionary authority as that term is defined in qualified immunity analysis; that to the extent their conduct violated substantive due process rights, *if at all*, those rights were not clearly established at the time; and that those officers are entitled to qualified immunity on the federal claims.  The court will discuss the qualified immunity issue later in this opinion as applied to the claims brought on behalf of the minor children; however, this discussion would apply as well to the claims brought on behalf of the estate.  In any event, the court's findings on qualified immunity provide an alternative basis for granting judgment for the Defendants on the federal claims brought by the estate.

### *(b).  Claims Brought on Behalf of the Minor Children*

Defendants also raise the issue of whether the claims against Wade and Forsythe brought on behalf of the minor children are similarly barred or whether their minority tolls the statutory period.  Plaintiff does not address this issue in her responsive brief.

Alabama Code § 6-2-8 (1975) addresses the suspension of limitations:

> (a) If anyone entitled to commence any of the actions enumerated in this chapter, ... is, at the time the right accrues, below the age of 19 years . . ., he or she shall have three years, or the period allowed by law for the commencement of an action if it be less than three years, after the termination of the disability to commence an action . . . .

Alabama case law provides that the *failure* of a personal representative to file or pursue a claim on behalf of the ward during the period allowed by the applicable statute of limitations does not bar recovery by the ward upon obtaining majority where § 6-2-8 is applies.  *Emerson v. S. Ry. Co.*, 404 So. 2d 576, 579 (Ala. 1981); *see Hood v. Johnson*, 210 Ala. 617, 99 So. 75 (1924) (holding that the existence of a legal representative capable of protecting the minor's interest does not prevent the minor, upon coming of age, from invoking the savings provision and

20

asserting a claim).  However, the issue here is not whether the savings provision allows the minor child to bring suit upon reaching majority.  Rather, the issue is whether the savings provision allows the representative – who failed to timely sue – to bring the claim on behalf of a minor a few months after the deadline.  Defendants apparently assume that the minority status tolls the statute for all claims brought on the minors' behalf except for the wrongful death claims, and Plaintiff has not addressed the issue.  Therefore, the court will also assume – without specifically finding – that all federal claims brought on behalf of the minor children are not barred by the relevant statutes of limitations.

### 3.  Federal Claims Brought on Behalf of the Minor Children

Having determined which claims are time-barred, the court must proceed to address the remaining claims brought on behalf of the minor children against Wade and Forsythe.  The federal claims against these Defendants are set forth in Counts I-III of the Amended Complaint[2]. The court has examined the nineteen pages that comprise those three counts and acknowledges its difficulty in identifying three distinct and separate claims.  Plaintiff's Amended Complaint is a classic "shotgun" pleading, the type of filing that the Eleventh Circuit has "roundly, repeatedly, and consistently condemn[ed] for years."  *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 979 (11th Cir. 2008).  Each of its counts purports to incorporate by reference all preceding paragraphs, and none of the counts has a title to provide the court with a helpful clue about the

---

[2]In addition to asserting federal claims pursuant to § 1983, Count I also states, in  general and conclusory language, that the rights violated are guaranteed by the "Alabama Constitution, statutory laws and common law." (doc. 1,  ¶ 37).  However, Plaintiff does not specify which Alabama laws and constitutional provisions were violated. No private cause of action exists for monetary damages based upon the provisions of the Constitution of Alabama of 1901.  *Matthews v. Ala. Agric. & Mech. Univ.*, 787 So. 2d 691, 698 (Ala. 2000).  In any event, in failing to specify which state laws and state constitutional provisions were violated, Plaintiff's Complaint does not meet the pleading standards set forth in *Ashcroft v. Iqbal*, ____ U.S. _____, 129 S. Ct. 1937, 1948-50 (2009); therefore, the court will not further address any claims purportedly brought pursuant to Alabama law.

type of claim asserted.  Because the three federal counts repeat much of same language and incorporate all paragraphs from preceding counts, the court is unable to distinguish between them.

The court finds that Counts I-III state at best one distinct claim for violation of Fourteenth Amendment substantive due process rights, brought pursuant to § 1983[3].  Because the federal claims brought on behalf of the estate are time-barred, the only federal claims that arguably remain are those brought on behalf of the minor children: claims that the officers, whose conduct "was arbitrary and conscience shocking in a constitutional sense," "acted with deliberate indifference to [Grant's and her] minor children's personal safety and failed to protect them from substantial risk of serious harm and violation of their rights under the Fourteenth Amendment . . . ."  (doc. 1, ¶¶ 30, 43).

The court has already entered judgment on Plaintiffs' claims against Wade and Forsythe in their official capacities.  The remaining claims are those asserted against them in their individual capacities, and Wade and Forsythe invoke the protection of qualified immunity for these claims.  "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Vinyard v. Wilson,* 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

---

[3]In cases brought under § 1983 when a Defendant raises qualified immunity, pleading standards  increase in the Eleventh Circuit.  *See Amnesty Int'l., USA v. Battle*, 559 F.3d 1170, 1179-80 (11th Cir. 2009).  To the extent that Counts I-III attempt to state any claims against Wade and Forsythe other than one for violation of Fourteenth Amendment substantive due process rights, the court finds that Plaintiff has not met the Eleventh Circuit's heightened pleading standard as to such claims.

"The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).

To receive this protection, Defendants must first establish that they were acting "within the scope of [their] discretionary authority when the allegedly wrongful acts occurred." *Vinyard,* 311 F.3d at 1346. The court must "consider whether the acts the official undertook 'are of a type that fell within the employee's job responsibilities.'" *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004) (quoting *Holloman ex. rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11 th Cir. 2004)). In the instant case, the conduct forming the basis of the § 1983 claims occurred when Wade and Forsythe were in the process of arresting Defendant Coffer. Because making an arrest falls within the officers' job duties, the court finds that they were performing a discretionary function. *See Crosby*, 394 F.3d at 1332 (finding the discretionary function determination was "easy" when officers' actions occur during an arrest).

Plaintiff, however, disputes that the officers were engaged in a discretionary function at the time of arrest. She argues that the APD had established "black and white" procedures for arrests that required officers to search suspects for weapons and to search the scene of the arrest for weapons and the officers had no "discretion" to vary from the policies. Plaintiff's focus reveals her misunderstanding of the term "discretionary authority" under federal qualified immunity analysis, which differs from that term's meaning under Alabama State-agent immunity analysis. The Eleventh Circuit has explained that, under federal qualified immunity analysis, the term includes all actions performed within the scope of the officer's duties, including actions

where the officer has no choice and including actions improperly performed. *See Harbert Intern., Inc. v. James,* 157 F.3d 1271, 1282-83 (11th Cir. 1998) (providing examples). In the instant case, because arresting suspects was within the scope of the officers' duties, the conduct involved fell within their discretionary authority as that term is defined in federal qualified immunity analysis.

"Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Ferraro*, 284 F.3d at 1194. To defeat qualified immunity, a plaintiff must satisfy the following two-part analysis: (1) the facts, when viewed in the light most favorable to plaintiff, must show that the officer's conduct violated a  constitutional right that was (2) clearly established at the time. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *abrogated in part by Pearson v. Callahan,* _____ U.S. _____, 129 S. Ct. 808, 818 (2009) (holding that district courts have discretion as to the order in which to address the two prongs).

With respect to the first prong, Plaintiff alleges that the officers violated substantive due process rights when they exposed Grant and her minor children to an unreasonable risk: after they arrested Coffer, they failed to handcuff him or otherwise prevent him from killing Grant while he was in their custody. Because the only claims that remain are those brought on behalf of the minor children, Plaintiff must somehow establish that the officers' failure to protect their mother from harm inflicted by their father while they were nearby violated the children's constitutional right to substantive due process.

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall ... deprive any person of life, liberty, or property without due process of law." The Supreme Court

of the United States has held that, as a general rule, "a State's failure to protect an individual

against private violence simply does not constitute a violation of the Due Process Clause."

*DeShaney v. Winnebago County Dept. of Social Servs.*, 489 U.S. 189, 195 n. 1 & 197 (1989)

(explaining also that the term "State," as used in this quote, includes state and local governmental

entities and their agents).  The clause protects people from the State, not from each other. *Id.* at

196.

The Supreme Court has enunciated a standard for determining when government actors

fall outside that general rule and can be held liable for substantive due process violations for their

failure to protect victims in non-custodial settings from harm caused by third parties:   only when

the government's conduct "can properly be characterized as arbitrary or conscience shocking in a

constitutional sense."  *Collins v. City of Harker Heights,* 503 U.S. 115, 128 (1992); *see Waddell*

*v. Hendry County Sheriff's Office*, 329 F.3d 1300, 1305 (11th Cir. 2003) (quoting that language).

As the Supreme Court has acknowledged, "the measure of what is conscience-shocking is no

calibrated yard stick."  *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1988).  Given this

fluid, amorphous standard, the courts must determine what "shocks the conscience" on a case-by-

case basis.

Even assuming that Plaintiff could establish that Defendants' actions were conscience-

shocking in the constitutional sense, she must also demonstrate that the constitutional violation

was clearly established at the time of the violation.  To do so, she must show "(1) that a

materially similar case has already been decided, giving notice to the police; (2) that a broader,

clearly established principle should control the novel facts in this situation; or (3) [that] this case

fits within the exception of conduct which so obviously violates [the] constitution that prior case

25

law is unnecessary." *Keating v. City of Miami*, ___ F.3d ____, 2010 WL 703000, at *9 (11th

Cir. May 2, 2010) (internal quotes omitted).  Because of the amorphous standard to be applied in

substantive due process cases such as the instant case and the Supreme Court's expressed

reluctance to expand the concept of substantive due process (*see Collins*, 503 U.S. at 125), the

instant case falls into the first category listed.  The only "clearly established" substantive due

process violations would be those where a factually similar case existed from the Eleventh

Circuit or the United States Supreme Court.

       In her brief and in the hearing on this motion, Plaintiff pointed to no factually similar case

establishing a substantive due process violation – particularly when the violence originated from

a third party and was directed at a third party who was not in custody –  and the court is aware of

none.  The only case that Plaintiff proffers as factually similar is *Cornelius v. Town of Highland*

*Lake*, 880 F.2d 348 (11th Cir. 1989), which the Eleventh Circuit has acknowledged is "dead and

buried," because it applied the "special relationship" and "special danger" doctrines superseded

by the Supreme Court's subsequent *Collins* opinion. *White v. Lemacks,* 183 F.3d 1253, 1257 &

1259 (11th Cir. 1999).

       In sum, the court finds that Plaintiff has not met her burden to defeat qualified immunity;

she has not established that the facts, when viewed in the light most favorable to her, show the

officers violated a constitutional right that was clearly established at the time.

*Saucier,* 533 U.S. at 201.  The court does not specifically rule on the issue of whether

Defendants violated substantive due process rights.  It finds, however, that to the extent their

conduct violated substantive due process rights, *if at all*, those rights were not clearly established

at the time.  It further finds that Defendants Wade and Forsythe are entitled to qualified immunity

on the claims brought pursuant to § 1983.

Accordingly, the court finds that the motion for summary judgment filed on behalf of Defendants Wade and Forsythe is due to be GRANTED as to the federal claims in Counts I-III. No further federal claims remain against Wade and Forsythe, and indeed, no federal claims remain in this matter; the remaining claims are all asserted under Alabama law.

### 4.  State Law Claims against Wade and Forsythe

The only claims remaining against Wade and Forsythe, Counts IV and V, are asserted under Alabama law.  Indeed, even Count VI, which is asserted against Defendant Coffer alone, is brought pursuant to Alabama law.  While a federal court has subject matter jurisdiction over pendent state law claims, its "decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary."  *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, ____ U.S. _____, 129 S. Ct. 1862, 1866 (2009) (citing and quoting § 1367 (c)).  In this instance, the court, in its discretion, chooses not to exercise supplemental jurisdiction of the state claims remaining after determining that the federal claims are due to be dismissed; it will not rule on the motion as to the remaining pendent state law claims asserted against Wade and Forsythe. Accordingly, the court finds that the state law claims asserted against Defendants Wade and Forsythe in Counts IV and V are due to be DISMISSED WITHOUT PREJUDICE.

### F.  State Law Claims against Defendant Coffer

The only claims that remain are state law claims asserted against Defendant Coffer in Counts IV-VI.  The court acknowledges that Defendant Coffer has not filed a motion for summary judgment or any other motion requesting that the claims against him be dismissed; in fact, Defendant Coffer has not filed any responsive pleading.   As stated previously, however, the

court, in its discretion, chooses not to exercise supplemental jurisdiction of the state claims remaining after determining that the federal claims are due to be dismissed; that decision includes the claims asserted against Defendant Coffer. Therefore, the court *sua sponte* finds that the claims against Defendant Coffer are due to be DISMISSED WITHOUT PREJUDICE.

## V.  CONCLUSION

In sum, for the reasons stated above, the court finds as follows:

Claims against Fictitious Parties

•       The court finds *sua sponte* that all remaining fictitious party Defendants in this case are due to be DISMISSED WITH PREJUDICE.

Claims Brought against Chief Dryden

•       The court finds that Chief Dryden's motion for summary judgment is due to GRANTED in its entirety.  The court will ENTER JUDGMENT in favor of Chief Dryden as to all claims asserted against him.

Claims Brought against the APD

•       The court finds that the motion for summary judgment on behalf of the Anniston Police Department is due to be GRANTED in its entirety; the court will ENTER JUDGMENT in favor of the Anniston Police Department as to all claims asserted against it.

Claims Brought against the City of Anniston

•       The court finds that the City's motion for summary judgment is due to be GRANTED in its entirety; the court will ENTER JUDGMENT in favor of the City of Anniston as to all claims asserted against it.

Claims Brought against Wade and Forsythe

*Official Capacity Claims*

- The court finds that the motion for summary judgment by Defendants Wade and Forsythe is due to be GRANTED as to all claims asserted against them in their *official capacities;* the court will ENTER JUDGMENT in favor of Wade and Forsythe as to those claims.

*Federal Individual Capacity Claims Brought on behalf of Grant's Estate*

- The court finds that the motion for summary judgment of Wade and Forsythe is due to be GRANTED as to all federal claims that Plaintiff brought *on behalf of Grant's estate* against them in their individual capacities. Those claims are barred by the two year statutory periods. Alternatively, the court finds that the challenged conduct of Defendants Wade and Forsythe, brought *on behalf of Grant's estate* against them in their individual capacities, fell within their discretionary authority as that term is defined in federal qualified immunity analysis; that to the extent their conduct violated substantive due process rights, *if at all*, those rights were not clearly established at the time; and that those officers are entitled to qualified immunity on the federal claims. Accordingly, these Defendants are entitled to judgment on all federal claims brought by the estate against them.  The court will ENTER JUDGMENT in favor of Wade and Forsythe on those claims.

*Federal Individual Capacity Claims Broughton Behalf of the Minor Children*

• The court finds that Defendants Wade and Forsythe are entitled to qualified immunity on the substantive due process claims in Counts I-III, brought against them in their individual capacities pursuant to § 1983. Therefore the court finds that the motion for summary judgment of Defendants Wade and Forsythe is due to be GRANTED as to those claims and the court will ENTER JUDGMENT in favor of Wade and Forsythe on them.

*State Law Individual Capacity Claims*

• As no federal claims will remain, the court, in its discretion, chooses not to exercise supplemental jurisdiction over the remaining pendent state claims asserted against Defendants Wade and Forsythe; thus, the court will DISMISS WITHOUT PREJUDICE those claims against Defendants Wade and Forsythe brought under Alabama law.  The court does not rule on the motion for summary judgment of Defendants Wade and Forsythe as to those remaining state law claims.

Claims Brought against Coffer

• As no federal claims will remain in this suit, the court, in its discretion, chooses not to exercise supplemental jurisdiction over the pendent state claims.  Therefore, the court *sua sponte* will DISMISS WITHOUT PREJUDICE all remaining claims

brought pursuant to Alabama law, including the claims in Counts IV-VI asserted

against Defendant Renzyne Coffer.

Dated this 12th day of April, 2010.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE